

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
JUN - 6 2014
ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**DAMION LEWIS and DERRICK LEWIS**                                    **PLAINTIFFS**

**V.**                                                    CIVIL ACTION NO. 3:14cv450 TSL-JMR

**HINDS COUNTY, MISSISSIPPI and**
**JOHN AND JANE DOES 1-100**                                          **DEFENDANTS**

## COMPLAINT

### *Jury Trial Demanded*

1.      This complaint is brought by Damion Lewis and Derrick Lewis (hereinafter, "Plaintiffs"), by and through undersigned counsel, against Hinds County, Mississippi (hereinafter, "Defendants") and John and Jane Does 1-100, seeking damages for injuries they suffered while incarcerated at the Hinds County Detention Center, located in Raymond, Hinds County, Mississippi.  The joinder of the Plaintiffs is permissible under *F.R.C.P.* 20 because their injuries arose out of the same transaction, occurrence or series of transactions or occurrences.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343, as well as 42 U.S.C. § 1983.  Subject matter jurisdiction is appropriate in federal court since a federal question is raised pursuant to the 8th and 14th Amendments to the United States Constitution.  All Administrative Remedy Procedures ("ARP") have been exhausted.

3.      Venue is appropriate in this Court under § 1391(b) and § 1392, as all acts and/or omissions occurred in Hinds County, Mississippi, which is where the Hinds County Detention Center is located.  Hinds County is within the Southern District of the United States District Court, Northern Division.

## PARTIES

4.      Plaintiff, Damion Lewis, was, at all times material to this Complaint, an adult incarcerated at the Hinds County Detention Center.  Substantial acts, omissions and events that caused Plaintiff's injuries took place in Hinds County, Mississippi.  Damion had been held in Hinds County Detention Center as a pre-trial detainee for over two (2) years at the time of the incident giving rise to this lawsuit.

5.      Plaintiff, Derrick Lewis, was at all times material to this Complaint, an adult incarcerated at the Hinds County Detention Center.  Substantial acts, omissions and events that caused Plaintiff's injuries took place in Hinds County, Mississippi.  Derrick had been held as a pre-trial detainee in the Hinds County Detention Center for nearly six (6) years at the time of the incident giving rise to this lawsuit.

6.      Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division.  Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the Hinds County Detention Center, which is also known as the County Jail for Hinds County, Mississippi.  Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards.  Defendant is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201.

Tyrone Lewis is the Sheriff of Hinds County, Mississippi. Sheriff Lewis is responsible for the administration of the Hinds County Detention Center, and has the duty to hire, supervise, train and discipline the staff at the facility, and to ensure the facility's compliance with ACA standards and the laws and Constitutions of Mississippi and the United States. His duties also include reviewing, investigating and responding to prisoner grievances and complaints, and as an employee of the Defendant, he was considered as a final policymaker for the Hinds County Detention Center at the time of the incident described in this Complaint.

7.     The Plaintiffs are ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of the Hinds County Sheriff's Department and/or Defendant. Plaintiffs will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages, as alleged herein, were proximately caused by their conduct. Plaintiffs, upon information and belief, assert that the Doe Defendants were the officers, agents, servants, and employees of the Defendant herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

8.     On or about March 31, 2014, at approximately 12:00 p.m., an altercation occurred between an unknown number of inmates incarcerated in Pod "A" at the Hinds County Detention Center. At some point the situation was believed to have stabilized; however, the already violent and turbulent atmosphere within Pod "A", which housed approximately 212 inmates, continued to escalate beyond a boiling point over the course of the afternoon, finally escalating into a full-blown riot which broke out between rival gang members housed within the Pod. Officers from a

3

number of area law enforcement agencies, including SWAT personnel, were dispatched to the facility to provide emergency assistance with the containment of the facility and situation. After approximately seven (7) hours had passed, during which time the inmates had complete control of Pod "A", the incident was considered contained. As a result of the riot, one (1) inmate was killed, and at least five (5) others- including the Plaintiffs- were seriously injured. The Plaintiffs suffered stab wounds to the head and various other parts of their bodies. They were also punched and kicked repeatedly.

9.      Plaintiffs were taken via ambulance to the University of Mississippi Medical Center, located in Jackson, Mississippi for emergency medical treatment for their extremely serious, life-threatening injuries. Both Plaintiffs nearly lost their lives as a result of their injuries, and the long-term physical damages remain undetermined at this early stage in their recovery, as well as to what level of recovery can reasonably be expected.

10.     Hinds County officials, including the Board of Supervisors and the Sheriff, have long been aware of the dangerous, violent and poor conditions in existence at the Hinds County Detention Center. On many occasions before the March 31, 2014 riot, representatives from the Hinds County Sheriff's Department advised the Hinds County Board of Supervisors ("Board") about the security issues at the jail, including but not limited to faulty locks on the inmates cell doors, lack of staff, and the overall violent condition which existed in the jail. The Hinds County Sheriff's Department requested that these issues be addressed in order to provide security to the inmates and staff. The Board failed to provide funds to fix those security issues, thereby acting with deliberate indifference to the inmates at the Hinds County Jail, including the Plaintiffs.

11.     In response to numerous repeat incidents of violence and inmate uprisings that occurred at the facility within a two-year span of time, as well as the public outcry and media

4

attention garnered by said incidents, the Hinds County Circuit Court entered an Order on July 23, 2013, mandating that the Hinds County Grand Jury perform an intensive and in-depth evaluation of the conditions of the Detention Center, and make its recommendations to the Court as to its findings.

12.     On September 17, 2013 the Report of the Hinds County Grand Jury was filed with the Circuit Clerk of the First Judicial District of Hinds County, wherein it determined that "the Hinds County Detention Center (HCDC) is in deplorable condition and inadequately staffed. In its present state, the HCDC poses major security risks to inmates, staff of the facility, visitors to the facility, and to the citizens of Hinds County. The facility also poses a major liability risk to Hinds County." The Report adopted the Assessment Report generated by Dr. James Austin, Ph.D; his sixteen (16) page Report prepared at the request of the Grand Jury documented numerous egregious and emergent issues in existence at the Detention Center warranting immediate correction (*See* Report of Hinds County Grand Jury attached hereto and incorporated herein by reference as Exhibit "A").

13.     Despite the Grand Jury Order, compliance by Hinds County officials has been minimal, at best. The understaffing of the facility and the minimal supervision provided to officers in the facility contribute to inmate abuse and exploitation of the inmates incarcerated there. Because staffing is so thin and supervision so minimal, inmate on inmate violence is rampant.

14.     Weapons are readily available throughout the facility. Sheriff Lewis is well-aware of this problem, which is documented in the Incident Reports and prisoner grievances that he receives and is responsible for reviewing. Despite the well-documented problems, and the Grand Jury Order, Sheriff Lewis has failed to take reasonable measures to stop, or minimize, the

introduction of contraband into the facility, thereby protecting inmates from receiving weapons-induced injuries. Hinds County has failed to give the Sheriff the funds his office needs to properly address the security problems at the jail.

15.     It is well documented that cell doors in most all of the units at the facility can easily be "rigged" to remain unlocked when shut- if the locks are operational in the first place- allowing inmates to leave their cells at any time and to enter the cells of others, resulting in many assaults. Mr. Austin's report acknowledged this problem. *See* Ex. A. There have been numerous incident reports regarding assaults whereby inmates escaped or entered other cells through "rigged", or non-operational doors. Defendant has failed to take adequate measures to ensure that the defective doors are replaced, and has failed to supervise officers adequately to ensure that they routinely and effectively examine doors to check for rigging.

16.     In June 2012, Sheriff Lewis and other members of the Hinds County Sheriff's Department conducted a tour of the Detention Center for members of the media after an inmate escaped. Sheriff Lewis' officers demonstrated how inmates could easily open the cell doors, among other security issues. The officers also demonstrated how inmates were using the metal in the ceilings throughout the facility to make "shanks" ("knives") which were then used to commit assaults on each other.

17.     A month later, in July 2012, a riot occurred at the Hinds County Detention Center. Inmates took over the jail and destroyed Pod "C". The inmates were able to take control due, in part, to locks on the cell doors malfunctioning and a lack of staffing. As a result of the destruction of Pod "C", inmates were crammed together in Pods "A" and "B". This overcrowding further exacerbated the tensions which already existed in the jail among inmates.

6

18.     Inmates were free to roam the jail wherever they wanted.  Inmates can also crawl through the ceiling to access other pods and secured areas to create a substantial security risk to others.   Jailers were so scared for their own lives that they actually videoed the inmates on cell phones and distributed the footage to the local media in 2012 in order to bring light to the serious safety problem.  Despite having knowledge of these serious issues, the Defendant, Hinds County, acting by and through their elected and appointed officials, deliberately continued to ignore the problems.

19.     Defendant and Sheriff Lewis are ultimately responsible for operating the Hinds County Detention Center in a manner intended to keep its prisoners safe.  Defendant and Sheriff Lewis demonstrated not only wanton and reckless disregard for the lives of the Plaintiffs, but also a deliberate indifference to the Plaintiffs' legal and constitutional rights under federal law, by not implementing the minimum standards that should already be reasonably considered necessary for a jail, but also those mandated by the Hinds County Grand Jury in its Report, to ensure the safety of all inmates housed at the Hinds County Detention Center.

20.     According to James Austin's expert report, the Hinds County Detention Center did not have a classification system at the time of the March 31, 2014 riot.  Not only were violent and non-violent offenders housed together, but rival gang members were as well.  Mr. Austin explained then that the lack of a classification system constituted a security risk.  Mr. Austin also found that the Hinds County Detention Center has no "protective custody" or "administrative segregation" units which are designed to protect certain inmates from other inmates.  Plaintiff Damion Lewis' criminal attorney, Gerald Mumford, requested that Damion be placed in protective custody on numerous occasions prior to March 31, 2014 due to threats made against his life.  However, Hinds County officials, acting with deliberate indifference, refused to move

Damion.  As a result, Damion was seriously injured in the March 31, 2014 riot.

21.     Contraband in the forms of drugs, cell phones and other similar items are readily available in the Hinds County Jail.  The contraband is either being brought in by guards or visitors.  Sheriff Lewis and his staff are aware of that such smuggling takes place, but they have failed to take reasonably adequate measures to halt the practice, including adequate measures to ensure that correctional officers are properly searched.  In at least one instance, a gun was smuggled into the jail and was in the hands of the inmates.  The presence of contraband in the facility increases the violence.

22.     The Hinds County Detention Center does not have fully operational surveillance cameras.  Sheriff Lewis was aware of this condition as early as June 2012.  The surveillance cameras would allow jailers to observe inmate movements and actions.  The jail was constructed in such a manner that precludes jailers who are in the control room from observing inmates without the benefit of surveillance cameras.  The lack of surveillance cameras, coupled with the understaffing, allows inmates to go unchecked for hours on end.  This lack of supervision allows inmates opportunity to commit violence and other criminal actions.  This lack of supervision proximately caused and or contributed to the March 31, 2014 riot.

23.     Jailers do not conduct security checks, or "counts", to confirm that inmates are inside the cells and that cell doors are securely locked.  Such failures lead to inmates roaming free when they should be in their cells, committing assaults on other inmates and engaging in other criminal activity.  The failure to conduct cell checks created an atmosphere of violence in the jail.  The Defendant, by and through Sheriff Lewis, has failed to train and supervise officers to ensure that they perform frequent, effective security checks on inmates locked in cells.

8

24.     Most, if not all, of the inmates at the Hinds County Jail are "pretrial detainees". However, due to various reasons not germane to this lawsuit, these pretrial detainees routinely spend years in the Hinds County Detention Center awaiting trial.  For example, Plaintiff Derrick Lewis was in pretrial detention for nearly six (6) years while Damion Lewis spent nearly two and a half years in the jail.  The Hinds County Detention Center is not equipped to handle inmates on a long term basis.  Jailers are not equipped to deal with offenders who are subjected to such long periods of confinement.  The jail itself is not designed in a way to house long term offenders and therefore, failed to provide the basic constitutional protections that inmates are guaranteed.  The housing at the jail was very cramped, especially after "C" Pod was closed as a result of the July 2012 riot.  As a result, inmates who were subjected to long pretrial incarcerations in a facility which is not designed to house them became more and more agitated and violent.   The Defendants were aware of the dangers of housing pretrial detainees for such a long period of time in a facility not designed for such a purpose, yet failed to take any actions to alleviate the problem.  Specifically, the Defendant failed to provide more training to the jailers, failed to create more programs for the inmates, failed to create more recreational activities for the inmates, failed to alleviate overcrowding, and failed to complete repairs to "C" Pod.

## EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS: PROTECTION FROM HARM DANGEROUS CONDITIONS OF CONFINEMENT

25.     Plaintiffs incorporate all allegations set forth in Paragraphs 1 through 24 hereinabove.  The Defendant, acting by and through its elected and appointed officials, acted with deliberate indifference in the allegations listed in Paragraphs 1 through 24.

26.     Defendant, by and through Sheriff Lewis and Doe Defendants 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Plaintiffs' constitutional rights as alleged herein.

9

Defendant was deliberately indifferent to the safety of the Plaintiffs and other inmates housed at the Hinds County Detention Center. As a result of these policies, the Defendant failed to protect the Plaintiffs and created an unconstitutional condition of confinement.

27.    Such unwritten policies, customs and practices include, but are not limited to the following:

        a.    inadequate and improper training, supervision and discipline of corrections officers;

        b.    inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon inmates, including the Plaintiffs, in violation of their constitutional rights.

        c.    inadequate and improper procedures, policies and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations.

        d.    inadequate or improper procedures, policies and practices for identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

        e.    officer's condoning and allowing inmates to fight;

        f.    failing to protect inmates from harm;

        g.    failing to prevent incidents of violence about which Defendant's employees had warning;

        h.    failure to properly classify inmates;

        i.    failure to have a protective custody system;

        j.    failure to have a working video surveillance camera;

        k.    maintaining a jail with inadequate security, such as properly locking cell doors and knowingly allowing inmates access to materials which they then turned into "shanks";

l.      failing to address the smuggling of contraband into the facility; and

m.      the chronic understaffing at the jail and hiring jailers with little to no training or supervision.

28.      By exhibiting deliberate indifference to the substantial risk of harm Plaintiffs faced as a result of Hinds County's policies and practices set forth above, which subjected them to excessive use of force and failing to protect the Plaintiffs from harm, the Defendants violated the Plaintiffs' right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

29.      Upon information and belief, the Plaintiffs charge that Defendant, through Sheriff Lewis, and/or Doe Defendants 1-100, had prior knowledge that a subsequent fight, or gang riot, was being planned or was sufficiently imminent, yet chose not to take any action to prevent it. Sheriff Lewis and Doe Defendants 1-100 were deliberately indifferent to the safety of the Plaintiffs and other inmates.  As a direct and foreseeable result of these actions and the failures to act of Defendants, Sheriff Lewis and Doe Defendants 1-100, to take the necessary steps to prevent this fight, the Plaintiffs suffered the harm alleged herein.

## **PRAYER FOR RELIEF**

The Plaintiffs request a jury trial and seek the following relief:

A.      Compensatory damages of, from and against the Defendant, in amount to be determined by this Court;

B.      Punitive damages of, from and against the Defendant, in an amount to be determined by this Court;

C.      Reasonable attorney's fees and all costs of this court;

D.      Pre and post judgment interest; and

E.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the _6_ day of June, 2014.

DAMION and DERRICK LEWIS, PLAINTIFFS

BY:   _Charles Mullins_

CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
MERRIDA (BUDDY) COXWELL (MB# 7782)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com
merridac@coxwelllaw.com

GERALD A. MUMFORD (MB# 101902)
THE MUMFORD LAW FIRM, PLLC
Post Office Box 683
Jackson, Mississippi 39205
Telephone: (601) 398-2347
Facsimile: (888) 801-9389
Gerald@themumfordfirm.com